**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**JENNIFER ROSSMAN, individually and on behalf of all similarly situated individuals,**

                     **Plaintiff,**

                v.                            6:18-CV-573
                                                    (FJS/TWD)

**DOLLAR GENERAL CORPORATION
and DOLGENCORP OF NEW YORK, INC.,**

                     **Defendants.**

---

**APPEARANCES**                                **OF COUNSEL**

**DISABILITY RIGHTS NEW YORK**      **JENNIFER J. MONTHIE, ESQ.**
725 Broadway, Suite 450                     **RYAN J. MCDONALD, ESQ.**
Albany, New York 12207                      **CHRISTINA ASBEE, ESQ.**
Attorneys for Plaintiff

**MCGUIRE WOODS LLP**                   **PHILIP A. GOLDSTEIN, ESQ.**
1221 Avenue of the Americas               **AMY MORRISSEY TURK, ESQ.**
Suite 20th Floor
New York, New York 10020
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Class Action Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 14.

## II. BACKGROUND

Plaintiff commenced this action, individually and on behalf of all similarly situated individuals, against Defendants, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.* and 28 C.F.R. § 36.101 *et seq.*, as well as New York Executive Law § 296 and New York Civil Rights Law § 40-c. As a result of Defendants' alleged violation of these statutes, Plaintiff seeks declaratory and injunctive relief as well as damages and reasonable attorney's fees.

## III. DISCUSSION

**A.  Defendants' motion to dismiss for lack of subject matter jurisdiction**

Defendants assert that the Court should dismiss Plaintiff's amended complaint because Plaintiff has not demonstrated that she has standing to pursue future equitable relief and that, therefore, the Court lacks subject matter jurisdiction over this action. *See* Dkt. No. 14-1 at 5.

To establish that she has standing, a plaintiff must demonstrate the following: "(1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) 'a causal connection between the injury and the conduct complained of'; and (3) redressability of the injury by a favorable decision." *Harty v. Simon Property Group, L.P.*, 428 F. App'x 69, 71 (2d Cir. June 29, 2011) (summary order) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Furthermore, a plaintiff who seeks "injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." *Id.* (citations omitted). Therefore, to establish standing for an ADA claim for which a plaintiff seeks injunctive relief based on lack of access to a public accommodation, she must "(1)

'allege[] past injury under the ADA'; (2) show that 'it is reasonable to infer from . . . her complaint that this discriminatory treatment will continue'; and (3) show that 'it is also reasonable to infer, based on the past frequency of . . . her visits and proximity of [the public accommodation] to . . . her home, that . . . she intends to return to [the public accommodation] in the future.'" *Id.* (quoting *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)).[1] Finally, in ADA cases, "'a "broad view of constitutional standing" is appropriate because "private enforcement suits are the primary method of obtaining compliance with the Act."'" *Harty v. Spring Valley Marketplace LLC*, No. 15-CV-8190 (NSR), 2017 WL 108062, *6 (S.D.N.Y. Jan. 9, 2017) (quoting *Baker v. New York State Dep't of Envtl. Conservation*, No. 10-CV-1016 (GLS/RFT), 2012 WL 2374699, at *2 (N.D.N.Y. Jun. 22, 2012) (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011))).

To support her claim under the ADA, as well as her state-law claims, Plaintiff asserts that, "[o]n or about June 3, 2017, [when she] visited Store #10652," she

> could not navigate in her wheelchair around Store #10652 because there were physical impediments and obstacles, including but not limited to [the following:] . . . merchandise stacked on the floor and in aisles, . . . large stocking carts placed at the ends of aisles blocking or narrowing the aisle pathway, . . . cardboard merchandise displays blocking or narrowing the aisle pathway, and . . . items arranged outside the store which blocked the curb ramp from the parking lot to the entrance.

*See* Amended Complaint at ¶¶ 31-32.

Plaintiff further alleges that these "impediments and obstacles . . . prevented [her] from navigating portions of Store #10652 in her wheelchair." *See id.* at ¶ 33.

---

[1] Furthermore, in cases involving class-action claims, such as this one, "[*b*]*efore* a class is certified, . . ., the named plaintiff must have standing because no one else has a legally protected interest in maintaining the suit." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009) (citations omitted).

After Plaintiff's June 3, 2017 visit to Store #10652, her counsel, on her behalf, "sent a letter to Defendants [on July 18, 2017] advising them of accessibility barriers at Store #10652." *See id.* at ¶ 34. In response to this letter, on August 8, 2017, Defendants sent a reply letter to Plaintiff's counsel, stating that "'each aisle in the store [would be] both clear and accessible,' and that the store manager [would] review 'Dollar General's internal policies concerning store accessibility' at Store #10652." *See id.* at ¶ 35. Defendants also stated that "'[s]tore employees were reminded to follow these internal stocking guidelines, which require that employees do not allow aisles to become blocked or obstructed during stocking and do not leave stocking carts unattended on the sales floor during operation hours.'" *See id.* at ¶ 36. Furthermore, Defendants advised Plaintiff's counsel that "they would remove stocking carts kept in front of the store to improve curb cut accessibility." *See id.* at ¶ 37.

On or about October 13, 2017, Plaintiff once again visited Store #10652 and "could not navigate her wheelchair around . . . and encountered physical impediments and obstacles." *See id.* at ¶¶ 38-40. Finally, Plaintiff alleges that she "intends to patronize . . . Store #10652 if it becomes accessible [and that] . . . Store #10652 is the closest store to [her] that sells basic necessities, and is the only store of its kind that [she] can travel to independently, without relying on transportation." *See id.* at ¶¶ 42-43.

The Court concludes that these allegations are sufficient, at least at this stage of the litigation, to find that Plaintiff has standing to bring her ADA claim, as well as her state-law claims. Specifically, she has stated facts, which accepted as true, demonstrate that she suffered past injury under the ADA in that, on two occasions in June and October 2017, the latter of which occurred after Defendants had assured her counsel that they would correct the problems that she had

encountered on her June visit to Store #10652, she was unable to navigate her wheelchair around the obstacles that Defendants' employees had placed in the aisles. Plaintiff's allegations also indicate that the same obstacles that she encountered on her June visit would continue and, in fact, allegedly did continue as evidenced by her October visit. Finally, Plaintiff has alleged that Store #10652 is the closest store to her that sells basic necessities and that it is the only one to which she can travel independently. Such allegations are sufficient to demonstrate that she intends to return to Store #10652 in the future.

For all these reasons, the Court finds that Plaintiff has alleged just enough facts "to allow the Court 'to draw the reasonable inference that' [she is] deterred from [returning to Store #10652] because of [D]efendants' purported violations of the ADA" and that such "deterrence constitutes the requisite injury under Article III to allow plaintiff[] to proceed with this action." *Baker v. N.Y. State Dep't of Envtl. Conservation*, No. 1:10-CV-1016 (GLS/RFT), 2012 WL 2374699, *3 (N.D.N.Y. June 22, 2012) (citing *Chapman*, 631 F.3d at 949-50) (other quotation and footnote omitted). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's amended complaint for lack of subject matter jurisdiction.

**B.      Defendants' motion to dismiss for failure to state a claim**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint if the plaintiff has not offered sufficient factual allegations that render her claim facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). The plausibility test "does not impose a

probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (footnote omitted). "The task of the court in ruling on a Rule 12(b)(6) motion is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (quotation omitted).

"To state a claim under Title III [of the ADA], [a plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(a); *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 124 (N.D.N.Y. 2000)) (other citations omitted).

In this case, there is no dispute that Plaintiff is disabled within the meaning of the ADA or that Defendants own, lease or operate a place of public accommodation. Thus, the only element of Plaintiff's claim is at issue is whether Defendants "discriminated against her by denying her a full and equal opportunity to enjoy the services [D]efendants provide." *Camarillo*, 518 F.3d at 156 (citations omitted).

The Ninth Circuit addressed a very similar claim in *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001 (9th Cir. 2015). In that case, the plaintiff, a wheelchair user, challenged a number of alleged barriers to access at a Pier 1 store. The plaintiff contended that these barriers denied him "'full and equal' access to the Store in violation of the [ADA]." *Id.* at 1002 (citing 42 U.S.C. § 12182(a)). After an appeal to the Ninth Circuit, which resulted in a remand, "the district court

held that the obstructions in shopping aisles and on sales counters [that the plaintiff had] encountered on numerous visits to the Store violated his rights under Title III of the ADA. . . ." *Id.* Therefore, the district court "granted [his] motion for summary judgment and enjoined [the defendant] from obstructing its aisles and counters in the future." *Id.* at 1002-03. The defendant appealed, "arguing that the alleged obstructions were 'temporary' barriers to access under the ADA's implementing regulations and[, therefore, did] not violate [the plaintiff's rights] under the [ADA]." *Id.* 1003 (citing 28 C.F.R. § 36.211(b)).

Specifically, in his second amended complaint, the plaintiff alleged that, on a number of visits to the store, he had encountered two specific barriers that violated his rights under the ADA. First, he alleged that "the Store's 'customer service counter for disabled patrons' was cluttered by merchandise, a condition which prevented customers with disabilities from easily purchasing items." *Id.* at 1003-04. "Second, he claimed, the Store did not maintain accessible routes for wheelchair users, as the Store's aisles were often obstructed with merchandise and other items." *Id.* at 1004. The plaintiff argued that "these barriers interfered with his ability to 'use and enjoy the goods, services, privileges, and accommodations offered at the store,' and denied him 'full and equal access.'" *Id.* In addition, he alleged that the defendant "'knew that these elements and areas of the stores were inaccessible, violate[d] state and federal law, and interfere[d] with (or den[ied]) access to the physically disabled.'" *Id.*

The Ninth Circuit began its analysis of the plaintiff's claims by reference to the ADA's regulatory requirements, 28 C.F.R. pt. 36, app. A (1991 ADAAG Standards). In particular three requirements were at issue: (1) the ADAAG requirement that "'[t]he minimum clear width of an accessible route shall be 36 in[ches],' 28 C.F.R. pt. 36, app. A, § 4.3.3"; the ADAAG requirement

that, "'[i]n department stores and miscellaneous retail stores where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 in (915 mm) in length with a maximum height of 36 in (915 mm) above the finish floor,' [28 C.F.R. pt. 36, app. A], § 7.2(1)"; and finally (3) "the requirement that public accommodations maintain 'readily accessible' facilities and equipment does not prohibit isolated or *temporary interruptions* in service or access due to maintenance or repairs.' 28 C.F.R. § 36.211(b) (emphasis added)." *Id.* at 1006. Furthermore, the court referred to the Technical Assistance Manual that the Department of Justice published "'pursuant to Title III's directive to provide technical assistance to covered entities,' . . . [which] provides that '[w]here a public accommodation must provide an accessible route, the route must remain accessible and not blocked by obstacles such as furniture, filing cabinets, or potted plants,' Manual § III-3.7000." *Id.* (footnote omitted). In addition, the court noted that the Technical Assistance Manual explained that "'[a]n isolated instance of placement of an object on an accessible route would not be a violation, if the object is promptly removed.'" *Id.* (quotation omitted). Finally, "DOJ commentaries to the final rule revising Title III's implementing regulations similarly note that 'a temporary interruption that blocks an accessible route, such as restocking of shelves,' is permitted by § 36.211(b)." *Id.* (quoting 75 Fed. Reg. 56,270 (Sept. 15, 2010)) (footnote omitted).

Applying these interpretive aids, the Ninth Circuit concluded that "the obstructed aisles [the plaintiff] encountered while visiting the Store were not 'isolated or temporary interruptions in . . . . access' under 28 C.F.R. § 36.211(b)." *Id.* at 1007. The court explained that the plaintiff had encountered "several obstructed and blocked aisles on *each* of eleven separate visits to the Store in 2011 and 2012." *Id.* In addition, the plaintiff had submitted photographs that "depict[ed] a number

of aisles that contain[ed] merchandise or other items, resulting in a functional width measurably less than the 36 inches required under the ADAAG." *Id.* In addition, the court noted that "[m]any of the aisles appear[ed] inaccessible due to the presence of large items, such as furniture (armchairs and tables), or display racks holding merchandise and ladders. Some of the aisles blocked to wheelchair users would have been accessible to nondisabled customers, who could have walked around or along the side of the blockage." *Id.* The plaintiff's expert had also visited the Store on a different day than the plaintiff's visits and "'witnessed a number of aisles blocked by merchandise or reduced in width below 36 inches.' The photographs [that the expert] took during his November 3, 2011, inspection confirm[ed] that some of the aisles were blocked to wheelchair users." *Id.*

The court acknowledged that the defendant had submitted an expert report to dispute the plaintiff's evidence, which stated that "on two inspections of the Store in October and November 2011, the 'aisles throughout the store were the required minimum 36" wide and clear of goods,' and that the expert was 'able to navigate the aisles in [his] electric Invacare wheelchair.'" *Id.* However, the court stated that the fact "[t]hat the Store's aisles were clear on two visits by [the defendant's] expert d[id] not create a triable issue of fact as to the state of the aisles on the eleven occasions when [the plaintiff had] visited the Store in 2011 and 2012. If those occasions are sufficient to demonstrate noncompliance with the ADA – as we ultimately conclude they are – it does not matter that there was compliance on two occasions when [the defendant's] hired expert inspected the Store." *Id.* at 1007-08. Furthermore, the court noted that the defendant had submitted a declaration in support of its motion in which it maintained that "the Store had 'policies and procedures' in place to ensure that the aisles remained unobstructed by merchandise, and so 'undisputably established that any items that were in the aisles or on the accessible check-out counter were "transitory" or "in

transit" to their proper location.'" *Id.* at 1008 (footnote omitted). The court concluded that "[t]he existence of policies designed to limit obstructions d[id] not establish that the obstructions that [the plaintiff had] encountered were 'temporary.' Instead, [the plaintiff's] evidence demonstrate[d] that these policies and procedures were either ineffective in preventing frequent blocking of the aisles or honored in the breach." *Id.*

The court also noted that, "given its frequency, the aisle access problem must be viewed systemically, not as a series of individual barriers to access. Removing one obstructing object does not assure accessible aisles where it is likely that soon thereafter another item will be moved and create a blockage." *Id.* Thus, the court concluded that "the evidence that [the plaintiff] encountered 'repeated and persistent failures' in accessing the aisles, Manual § III-3.7000, confirm[ed] that the Store [had] failed to remedy the problem 'promptly,' -- that is, within a 'reasonable period of time,' 56 Fed. Reg. at 35.562 – rendering its maintenance 'improper or inadequate.' Manual § III-3.7000." *Id.* Finally, the court recognized that, "[t]o be sure, the 'regulations implementing the ADA do not contemplate perfect service.' . . . Consequently, 'an isolated or temporary hindrance to access does not give rise to a claim under the ADA.' . . . But the cases so holding have generally concerned truly *isolated* failures to maintain readily accessible facilities." *Id.* (internal quotations omitted).

Admittedly, in the present case, Plaintiff did not visit Store #10652 on as many occasions as the plaintiff in *Chapman*; nor, at this juncture, has Plaintiff had the opportunity to provide the Court with any evidence, other than the allegations in her amended complaint, to support her claim that Defendants discriminated against her in violation of Title III of the ADEA. Plaintiff, however, has alleged that, on two occasions in June 2017 and October 2017, she visited Store #10652 and that, on both occasions, she encountered physical impediments that prevented her from being able to

navigate through the store in her wheelchair.  Furthermore, she asserts that, after her visit to Store #10652 in June 2017, her counsel contacted Defendants' corporate office and notified Defendants of the accessibility barriers she had encountered; and Defendants' counsel responded and assured her that Defendants would resolve the accessibility barriers.  Apparently, however, despite this assurance, at least some of the impediments still existed when she returned to Store #10652 in October 2017.

Keeping in mind that, on a motion to dismiss, the court's function is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof," *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d at 574, and to determine whether Plaintiff has pled sufficient facts, which if accepted as true, state a claim that is plausible on its face, the Court concludes that Plaintiff has alleged sufficient factual matter in her amended complaint to nudge her claim that Defendants violated Title III of the ADA over the line from speculative to plausible.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's Amended Class Action Complaint

pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 14, is **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Dancks for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 25, 2019
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge